Southern Bank of Norfolk, a Banking Corporation Organized and Existing Under the Laws of the State of Virginia v. Commissioner.
Southern Bank of Norfolk v. Commissioner
Docket No. 29543.
United States Tax Court
1952 Tax Ct. Memo LEXIS 348; 11 T.C.M. (CCH) 47; T.C.M. (RIA) 52017; January 22, 1952
Edward L. Breeden, Jr., Esq., for the petitioner. J. Nelson Anderson, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in excess profits tax for the year 1945 in the amount of $8,904.19. The sole question presented for our determination is whether amounts on deposit in the bank of petitioner, evidenced by deposit agreements, certificates of deposit, and savings deposits constitute borrowed invested capital within the meaning of Section 719 of the Internal Revenue Code. Other questions raised by the petitioner in its petition have been abandoned by it. The case was submitted upon a stipulation of facts and six exhibits, five of which were attached to the stipulation Findings of Fact The facts are found to be as stipulated. *349 Petitioner is a banking corporation, incorporated in 1928 under the laws of the State of Virginia, and has been exclusively in the general banking business in that state since that date. It filed its corporate income, declared value excess profits and excess profits tax returns for the year 1945 with the collector of internal revenue for the district of Virginia. During the year 1945 the petitioner was a member of the Federal Deposit Insurance Corporation. The following table shows the amounts of outstanding interest-bearing credits the petitioner had on its books at the end of each month during the year 1945, the annual average, and interest paid on these credits: Funds Received
from the
Certifi-
State of
cates
Savings
Virginia
of Deposit
Deposits
Total
January
$ 1,057,000.00
$ 5,200.00
$ 4,213,996.27
$ 5,276,196.27
February
1,057,000.00
5,200.00
4,305,834.03
5,368,034.03
March
1,057,000.00
5,435.24
4,371,450.94
5,433,886.18
April
1,057,000.00
5,435.24
4,479,864.74
5,542,299.98
May
1,057,000.00
5,435.24
4,528,592.76
5,591,028.00
June
1,057,000.00
5,435.24
4,564,730.00
5,627,165.24
July
1,057,000.00
5,435.24
4,671,980.18
5,734,415.42
August
1,057,000.00
5,435.24
4,842,304.37
5,904,739.61
September
1,357,000.00 *
5,435.24
4,917,249.31
6,279,684.55
October
1,357,000.00
5,435.24
4,979,119.09
6,341,554.33
November
1,357,000.00
5,435.24
4,934,677.89
6,297,113.13
December
1,357,000.00
5,435.24
4,889,193.34
6,251,628.58
$13,884,000.00
$64,752.40
$55,698,992.92
$69,647,745.32
Average
$ 1,157,000.00
$ 5,396.03
$ 4,641,582.74
$ 5,803,978.77
Interest Paid on Above Credits
$ 11,073.60
$ 53.96
$ 42,238.33
$ 53,365.89
*350 The standard form used by the State Treasurer, prescribing the terms and conditions under which interest-bearing funds of the State of Virginia, outstanding on petitioner's books during the year 1945, were deposited with it, is shown in the following letter dated December 22, 1944, from the State Treasurer to the petitioner: "Attached hereto is a copy of our letter to the State-Planters Bank & Trust Company covering a deposit of $300,000 made to the credit of your bank, together with a renewal agreement covering this deposit, which will bear interest at the rate of 1% per annum, the account to be in the name of 'W. Tayloe Murphy, Treasuer of Virginia - General Account Time Deposit… $300,000.00' "This agreement will mature February 22, 1945. "The time deposit may be renewed, payable upon the following terms. "The above amount shall be payable sixty days after the above maturity date, provided demand for payment is made on you at least fifteen days before such date of payment. "If such demand is not made, this agreement shall be considered as renewed from time to time for successive periods of sixty days each, *351 until terminated, and the said sum shall be payable on the last day of any such period, provided demand therefor is made at least fifteen days befores such date. "Payment of accrued interest to such date shall be made upon each of the days upon which payment could be demanded, and shall be made by check sent to the Treasurer of the Commonwealth of Virginia at his office in Richmond. "You may terminate this agreement as of any date on which payment could be demanded, by giving notice of your intention at least fifteen days before such date. If such notice is given, the above mentioned sum shall be payable on demand on such date of termination and thereafter, and no interest shall be payable thereon after such date of termination. "If this agreement is acceptable to you please so indicate by signing and returning the enclosed copy of this letter." The funds deposited with petitioner by the State of Virginia were secured by United States Treasury Bonds in conformity with Section 2158 of the Code of Virginia (now Sections 2-178 to 2-183 and 2-191 of the Code of Virginia, 1950). All of petitioner's liability on the deposits shown in the above table under the heading "Certificates *352 of Deposit" was evidenced by certificates in the same standard form, the maturity dates of which were thirty days or more. The standard form of the certificates of deposit reads as follows: "SOUTHERN BANK OF NORFOLK "Norfolk, Va…. 19 $ "This certifies that… has deposited with this Bank… Dollars Payable to the order of… on… 19 upon the return of this Cerficate properly endorsed with interest from date at the rate of… percent per annum. The Bank is prohibited by Federal Law from paying this deposit in whole or in part before its maturity and from paying interest after maturity. "Vice President "Cashier." The "Savings Deposits" listed in the above table were held under the terms and conditions of the "General Regulations" prescribed by petitioner which appeared in the passbooks of the depositors. These regulations provided, among other things, that no person should have the right to expect or demand any part of his or her principal or interest without producing the original passbook, nor except upon sixty days' notice in writing; that small amounts might be voluntarily paid by the bank upon presentation of the passbook, but without the bank waiving its right to *353 demand sixty days' notice; that in times of sudden and unexpected demand for money the bank might require ninety days' notice; and that all rules governing savings deposits should be subject to change without notice by any regulations promulgated by the Federal Deposit Insurance Corporation. They also provided that the bank's officers should be at liberty to return the whole or any part of any deposits, and have the power to close accounts and to refuse to receive the account of any individual when they deemed it proper. In the balance sheets as of the beginning and end of the year 1945 set forth in its corporation income and declared value excess profits tax return for that year, the petitioner listed no liability for bonds, notes, and mortgages payable with original maturity of more or less than one year, and included in amounts reported as its deposit liability interest-bearing funds of the State of Virginia deposited with it and outstanding on its books during the year 1945, funds for which certificates of deposit were issued, and savings deposits evidenced by passbooks. The only deduction taken in this return for interest paid during the year was the amount of $53,365.89, which *354 amount is equal to the aggregate of interest paid by petitioner during the year on deposits made by the State of Virginia, certificates of deposit, and savings deposits. In its excess profits tax return for the year 1945, the petitioner did not treat these deposits as constituting borrowed capital for the purpose of computing its excess profits credit. Opinion RAUM, Judge: Petitioner contends that its borrowed invested capital under Section 719 (a) (1) of the Internal Revenue Code[1] should include amounts deposited with it by the State of Virginia, amounts for which certificates of deposit were issued, and amounts of savings deposits evidenced by passbooks. The only language in Section 719 (a) (1) which is suggested as comprehending the foregoing amounts is the term "certificate of indebtedness", and this term is explained by Section 35.719-1 of Regulations 112 as follows: *355 "The term 'certificate of indebtedness' includes only instruments having the general character of investment securities issued by a corporation as distinguishable from instruments evidencing debts arising in ordinary transactions between individuals. Borrowed capital does not include indebtedness incurred by a bank arising out of the receipt of a deposit and evidenced, for example, by a certificate of deposit, a passbook, a cashier's check, or a certified check." The validity of these regulations was sustained in Commissioner v. Ames Trust & Savings Bank, 185 Fed. (2d) 47 (C.A. 8), and they were held applicable to exclude time certificates of deposit from borrowed invested capital. That decision has been followed by this Court in National Bank of Commerce, 16 T.C. 769, involving interest bearing nonnegotiable time certificates of deposit and savings deposits evidenced by passbooks subject to bank regulations similar to those applicable to the passbooks herein. And the same result was reached in Capital National Bank of Sacramento, 16 T.C. 1202, involving certificates of deposit issued to state and county treasurers where local (California) *356 law required the bank to pledge security for such deposits. We think the foregoing decisions govern the disposition of the present case. We have examined the provisions of Virginia law relied upon by petitioner herein in an effort to support a different result in relation to the funds which it had received from the State of Virginia. However, we are satisfied that the bank's contractual relations with the State did not bring into being any "instruments having the general character of investment securities issued by a corporation", within the meaning of the Treasury regulations, and that this case cannot fairly be distinguished from the cases noted above. Decision will be entered for the respondent. Footnotes
*. $300,000 increase occurred on September 15, 1945.↩
1. SEC. 719. BORROWED INVESTED CAPITAL. (a) BORROWED CAPITAL. - The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following: (1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage or deed of trust, * * *.↩